Good morning, your honors. Carl Gunn from Mr. Arellano. I'm going to try to reserve two minutes for rebuttal. I'll try to keep track of my time. The ultimate sort of basic question in this case is what are, quote, cultural ties, unquote, and what are not, quote, cultural ties, unquote, but instead, quote, ordinary economic incentives, unquote. It's really, I think, how do we treat economic considerations that are inexorably intertwined with cultural ties? Are those ordinary economic incentives, which is what the Rivas-Gonzalez case talks about, that are completely, that don't count as part of cultural assimilation? Are they part of the cultural ties? And I think the circumstances here really pretty dramatically pose that question. The financial circumstances that the district court referred to were basically Mr. Arellano being in Mexico with absolutely no place to stay and absolutely no one to go to. He returned to this country, yes, I suppose in part because he needed a place to live and he needed to feed himself. Well, now, he'd been in Mexico four years. Three, Your Honor, but yes. I mean, he wasn't a baby. He could have made friends. Well, but... I mean, you said nobody to go to. A man, a growing man is living in the place three years. Your Honor, I think the district court, though, recognized and decided it didn't matter. Maybe that's one response the district court could have taken, but I think the district court recognized and implicitly found that he didn't have any place to stay there and he didn't know anyone there anymore. He certainly didn't have... But I'm asking you now, how do you explain that? A growing man, reasonably competent... Reasonably what, Your Honor? He's not an idiot. He lives in the place three years with his grandmother. Why doesn't he meet some people? Well, I think Mr. Arellano ended up being the type of person who didn't meet any people and he just stayed there with his grandmother and took care of his grandmother and he was pretty devoted in that way. Well, it's kind of amazing, kind of a wreck of his life. Well, and I think some people are like that. I think that's what was going on with him. And, of course, everyone else he had any relationship with and was at all close to in terms of family was here in the United States. I think the point is that the, quote, financial reasons, unquote, here were really part and parcel of the cultural ties. Those financial reasons existed only because of the cultural ties. And first, I'm not even sure they're, quote, economic incentives, unquote, but certainly to the extent they are economic incentives, they're not, quote, ordinary economic incentives, unquote, which is the line that's drawn in this court's case law, which is basically what the application note in question was based on. You know, I'm having a hard time understanding your argument because the judge granted an adjustment for cultural assimilation. Correct. But it looks to me just like he listened to your facts and your argument. He said there was a basis for cultural assimilation adjustment, variance, or whatever you want to call it. I'm not sure exactly what he did here, but he did adjust downward. And you just seem to be upset that he didn't go down further. Well, of course, my being upset doesn't get in reverse, but what he did, Your Honor. But that's really when it comes down to it. Well, no, I think what he did, Your Honor, is he did a balancing. He basically sort of looked at how much of the motivation was from the cultural ties and how much was from financial reasons that don't justify a downward adjustment. And basically, I don't know, say we had this, you know, 10 units of mitigation or reasons. He basically decided that three or four of those reasons were the financial reasons and six or seven of them were the cultural ties. And he gave less down because of that. I think you pressed him and you asked him specifically to make a specific finding. And he said, no, both reasons exist here. Right, but what he did... And I took from that was that he took everything all together, your whole argument, and he said in his own judgment, for whatever it's worth, I think this only merits, what was it, 11 months down. But what he said is, he said the financial reasons part of it, those don't count for anything because those aren't cultural ties. He distinguished between the financial reasons and the cultural ties and he didn't give anything basically for the financial reasons. And the problem is that those financial reasons were really part of the cultural ties and so they should have gotten weight just like the cultural ties did. That's my argument and I think that's the argument that's supported by the case law. And you're right, he didn't sort of break it down on his own, but he did distinguish between those two things and suggest they were two different things. And my point is that the financial reasons are really part and parcel of the cultural ties. The government tries to avoid this in one of two ways that I don't think either one of them flies. First, they argue harmless error. The only harmless error case they cite, Munoz-Camarena, says that harmless error is very rare. And I don't think they point, the judge never even said here that he would have given the same sentence even if he'd seen the financial reasons as cultural ties. So I don't think that worked. They also argue that he didn't engage in interpretation. That just doesn't make sense. He took a legal provision, this guideline application note, and he applied it to the facts. And any time you take a legal provision that's a written thing like an application note and apply it to something, you have to read the written thing, the application note, and decide what it means. And that is interpretation. The government seems to say, oh, it's obvious what it means. I'll leave that for the court. I would suggest it's not obvious what it means, especially when you have to read it against the Litman and Rivas-Gonzalez background. I'll save the rest of my time for rebuttal unless there's other questions I can respond to. All right. Fine. Good morning, Your Honors. Nathaniel Walker for the United States. This panel should affirm the district court's below-guideline sentence under an abuse-of-discretion standard because both the overall sentence and the 11-month downward departure that the district court granted were substantively reasonable. It's that simple. Defendant wants this court to believe that his appeal is more complicated. Defendant is mistaken. Because the district court did not, and did not need to, interpret the cultural assimilation application note in reaching its sentence. I can give the panel at least four reasons why it's clear the district court did not interpret Comment Note 8 to Guideline Section 201.2 and why de novo review is not the correct review standard here. First, yes, Your Honor. No, go ahead. Go ahead. I'm listening. Thank you. First, the record before the court, let me just list them out so it's clear where I'm going. The record, the erroneous conclusions that necessarily follow from an incorrect use of the term interpret here. Third, the text of the comment note itself. And fourth, this court's presidential case law. So first, the record. A quick reference to excerpts of record pages 28 through 38, and this is part of the transcript of the sentencing hearing, shows what the district court did. And that's first and foremost what we need to consider here is what did the district court do? It considered the explicit text of the application note. It checked with the parties to make sure that there were no disputes as to either the facts of the case or the applicable rule of law. And then it applied the plain text of Comment Note 8 to the facts of this case. That's all the district court did. And that's why abuse of discretion review is appropriate here. Second, Your Honors. But didn't you raise the whole notion that the real reason why it came back is purely economic? I think the government conceded before the district court, and I would concede here, that the reasons defendant returned to the United States were mixed. There were some motivations defendant had that were indicative of cultural assimilation. And there were some motivations that defendant had that were economic. And that's not atypical. As Blitman points out, as the dissent of Rivas-Gonzalez points out, in fact, the majority opinion of Rivas-Gonzalez concedes, it is not unusual that many defendants will have mixed motives. But that does not mean that a downward departure for cultural assimilation will be appropriate in many cases or even in most cases, because it's not enough that a defendant has United States citizen relatives, has cultural and economic ties to the United States. Those ties must further be unusual before a downward departure is appropriate. But one thing I want to make sure to... So is a district court judge supposed to excise any consideration of economic motivation? Not any consideration regarding economic motivation, no, Your Honor. We can imagine, for example, a Venn diagram consisting of two circles, one of which represents ordinary economic incentives, one of which represents unusual cultural ties. There will very likely be an area of overlap between those two circles. But what the district court properly did here was, in applying the text of the guidelines to the facts of this case, decide, okay, yes, some of the motivators that caused defendant to return to the United States were indicative of cultural assimilation. Some were mixed factors. But when we look at these factors closely enough, some motivators were purely economic. That's why the district court decided 11 months and no farther. This is what the appropriate standard is with reference to the comment note. One thing I want to make sure to emphasize here is the importance of the correct understanding and usage of the term interpret or to interpret. Sure, colloquially, we use that word all the time. We can't move through the world without interpreting it. Our sensory organs interpret the stimuli they receive, and they let us know if we're looking at a bear or an ice cream cone. But that's the incorrect usage here because if we accept that usage, that would mean that every district court is always interpreting every guideline every time it looks at them simply by reading them, simply by looking at the words on the page. It's apparent that that is the incorrect usage because that would make the deferential abuse of discretion standard obsolete. That would make all review de novo. And it's pretty clear that that's not the way this court does business. For purposes of divining the correct appellate review standard, interpretation can mean one of a handful of things. It can mean that the district court fails to recognize its discretionary authority to depart downward. That's obviously not applicable here because the district court did depart downward. We know it recognizes authority to do that. Interpretation can also look like the district court selecting the wrong rule of law. We also know that didn't happen here because it was never in dispute that Comment Note 8 was the correct rule of law for the district court to apply. It sounds like what defendant wants to argue is that the district court was trying to understand the underlying meaning of the word culture or of the term cultural assimilation. But again, a quick reference to the record shows that the district court never did that, never asked the parties for argument on that point, and didn't spend any time delving into those underlying definitions. Delving into what? Those underlying, the underlying meaning of those words or phrases, Your Honor. The district court simply applied the plain text of the application note to the facts here in this case. You're not saying the district court didn't really understand what cultural assimilation meant? No, indeed, Your Honor. And in fact, one of the reasons the district court wouldn't have had any problems understanding is because the plain text of the application note gives a whole lot of guidelines for how district courts are to think about these issues. The application note provides a non-exclusive list of appropriate factors that the district court may consider. It provides a discussion of how those factors may be applied. And since the cultural assimilation analysis is necessarily fact-intensive and fact-specific, as Lippman teaches us, given that and given the guidelines that the application note provides, application of the text of the application note is fairly straightforward in this case. Lastly, Your Honor, I would emphasize this court's case law, presidential case law. When the facts of the case are not in dispute, when the applicable rule of law is not in dispute, and when all that remains is for a district court to apply the law to the facts, de novo review is not the correct review standard. I'm thinking of Hinkson and McConney specifically here. That's what the district court did. Nowhere in that process is interpretation present. And moreover, one of the things that Hinkson tells us is that when a district court is examining specifically motive and intent, de novo review is also not appropriate here. And that's exactly what this district court was interested in. What was it that motivated this defendant to return to the United States? What was his intent in returning to the United States? For all those reasons, Your Honors, that's why an abuse of discretion. And that's what the judge talked about during sentencing? Yes, Your Honor. There was a whole lot of argument at sentencing about why the defendant returned. The facts were clear. The facts were agreed upon. The applicable rule of law was agreed upon. And it was the district court's job to parse out what was it that motivated the defendant? How can I apply the comment note to the facts, the undisputed facts in this case? I have a little bit of time left. That's the wonderful world of the sentencing guidelines. Yes, Your Honor. They're great abominations. Yes, Your Honor. You love them, don't you? Can't help it. Can't help it. Since I do have about 40 seconds left, I want to make one last point, if it pleases the Court. That is a always good idea to leave a little time in the bank for the future. Yes, Your Honor. And keeping that in mind, I'll just very quickly, if the Court doesn't mind, I'll just say that even if the Court isn't prepared to buy everything that I just argued, there's still the issue of harmless error. And even if this Court thinks that the district court interpreted the guidelines, and even if this Court thinks that the district court's decision was error, the district court still complied with the requirements of Gall and Cardi because it correctly calculated the sentencing guidelines. It kept that correct calculation in mind throughout the sentencing process, and it adequately supported both the overall sentence and the amount of downward departure with reference to 3553A and the application note. And now I'm over. I apologize, Your Honors. Well, there was a very fine judge that one time said that the harmless error rule is the last refuge of the scoundrel. I don't doubt it, Your Honor. That's why I put the argument last in my brief. Thank you, Your Honors. Scalia. I'm going to withdraw my last deposit from the bank, Your Honor. Let me go back to this issue of interpretation, and let me sort of take the Court through step by step on the point I'm trying to make. My opponent here says every district court, if my argument leads to de novo review in every case because the district court, I'm arguing, interprets the guidelines in every case. Well, it doesn't because it only leads to the de novo review if that's where the error is, if there's a misinterpretation of the guidelines. If what the defense is arguing about is something else, then you don't have de novo review. It has always been the case that you have de novo review when there are errors of law. Here, the error of law was in interpreting the term cultural ties to exclude these quote, financial reasons, unquote. Now, I don't personally find that quote, cultural ties, unquote, is plain text that's plain language that doesn't require any interpretation at all. I'll leave that up to the Court, but the Court certainly spent a lot of time discussing the concepts in Littman and Rivas-Gonzalez. And, in fact, Judge Pragerson, you wrote a strong dissent in Rivas-Gonzalez from the denial of rehearing on Bonk because there was a big dispute in that case about the meaning and application of those terms. Second, the district court did, at least implicitly and not so implicitly, interpret those terms on page 30 and interpret cultural ties to exclude financial reasons. On page 31 of the excerpt, at line 12, the Court says the other question that's raised is whether the reentry was for cultural assimilation or whether it was for financial reasons, suggesting those are two different things. And then he describes the financial reasons as the grandmother having passed away, her residence being sold, and the defendant not having a job. So I think the district court clearly did interpret cultural ties, in quotes, to exclude those financial reasons. The only problem with your argument, though, is he ultimately made a specific finding that there was a basis for cultural assimilation. And what you're really quarreling with, as I understand it from your argument, is that when he was determining how far to go down, he took into consideration those economic What he basically He also expressed concern, if I remember correctly, about, you know, the third factor, the C factor, such a departure is not likely to increase the risk to the public from further crimes of the defendant. He said that's a close call. Right. But he never actually said that was one of the reasons he was limiting the downward. That was earlier on in the discussion. But I guess my concern, the only way it's reviewable by this Court, I would submit, Your Honor, is if there's an error of law. And so I focused my arguments on there being an error of law. The error of law here was saying those financial reasons are not part of cultural ties and so essentially don't count towards a downward departure or variance. The other point I wanted to make is my opponent talks about the abuse of discretion standard and the substantively reasonable standard of review. It's real important to remember that the Supreme Court way back in Coon said, by definition, there's an abuse of discretion if there's an error of law underlying or in the exercise of the discretion. And the same abuse of discretion concept extends to the substantively reasonable review of sentences. If you read the Rassam case, both the majority and the dissent in Rassam actually basically said this substantively reasonable review concept comes from abuse of discretion review. So the error of law requires reversal there, even if it's worked in through that standard of review. So I think I've used my time up. All right. Thank you very much. And this matter will be submitted.
judges: Pregerson, Noonan, Paez